***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Defendants have not shown good grounds to reconsider the evidence, and the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease.
4. An employment relationship existed between the parties at the time of the alleged injury and/or occupational disease.
5. The employer in this case is Goodyear Tire and Rubber and the carrier liable on the risk is Liberty Mutual Insurance Company.
6. Plaintiff sustained a compensable injury to his left upper extremity and cervical spine on or about July 19, 2005.
7. Plaintiff's average weekly wage at the time of the July 19, 2005 compensable injury by accident was $1,203.88 which leads to a maximum compensation rate for the year 2005 of $704.00.
8. Plaintiff alleges on August 19, 2009 he suffered a change of condition and/or exacerbation to his July 19, 2005 compensable left shoulder and cervical spine injury due to being required by Defendant-Employer to work outside his permanent work restrictions for his compensable July 19, 2005 left shoulder injury.
9. Plaintiff was paid the entire day of the alleged injury.
10. Plaintiff last worked for Goodyear Tire and Rubber on December 7, 2009
 ***********
The following were marked and received into evidence by the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit 1 — Pre-trial agreement. *Page 3 
2. Stipulated Exhibit 2 — Medical records, Dr. Kobs 11/6/08 deposition transcript, and discovery responses.
3. Plaintiff's Exhibit 1 — DVD of wind-up job.
4. Plaintiff's Exhibit 2 — (This exhibit was not offered into evidence.)
5. Plaintiff's Exhibit 3 — Forms 33 and 33R.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 61 years old, had completed eighth grade, and had resided in Linden, North Carolina for 25 years. Plaintiff began working with the Defendant-Employer in 1977.
2. On July 19, 2005, Plaintiff suffered a compensable injury by accident to his cervical spine and left upper extremity while working with Defendant-Employer. Plaintiff treated with Dr. Mark Mikles of the Raleigh Orthopaedic Clinic, and was released in January of 2006 at MMI for his neck with a 5% permanent partial disability rating to his neck. Plaintiff treated with Dr. Jeffrey Kobs, also of the Raleigh Orthopaedic Clinic, who performed a left shoulder subacromial decompression and labral debridement on December 19, 2006. Following surgery, Dr. Kobs released Plaintiff at maximum medical improvement with a 15% permanent partial disability rating to his left shoulder and permanent restrictions of no lifting, pushing, or pulling in excess of 30 pounds with his left upper extremity, and no repetitive motion above shoulder level with his left upper extremity.
3. Following Dr. Kobs' release, Defendant-Employer placed Plaintiff in a Wrap Bead Service position. On January 28, 2009, Deputy Commissioner Adrian Phillips entered an *Page 4 
Opinion and Award finding the Wrap Bead Service position to be "unsuitable as it requires physical activity in excess of the work restrictions assigned by the treating physicians." The Deputy Commissioner ordered Defendants to authorize Plaintiff's temporary total disability benefits until Plaintiff returned to suitable employment or further Order by the Commission.
4. Defendants did not initiate Plaintiff's temporary total disability benefits after Deputy Commissioner Phillips filed her Opinion and Award. Instead, Defendants required Plaintiff to begin working in the Wind-Up Operator position in approximately March of 2009.
5. As a Wind-Up Operator, Plaintiff worked on the Fabric Calendar and was required to watch rolls of rubber and cloth feed through the Fabric Calendar and replace the rolls as needed. Plaintiff was required to use a control, tethered to the hoist, which guided the overhead hoist used to lift the rolls that he guided with his other arm. Plaintiff testified at the hearing before the Deputy Commissioner that this was a two-handed job in which he used his dominant hand to operate the control and used his left arm overhead to guide the hoist carrying the roll.
6. A physical therapist with Defendant-Employer manufactured a cable Plaintiff could use so he did not have to lift his left arm above shoulder height when guiding the hoist. Plaintiff testified that the cable got in the way of employees on other shifts and they discarded it, requiring Plaintiff to use his left arm to guide the hoist overhead.
7. Another duty required of the Wind-Up Operator was to take strips of rubber off the mill when it went down due to a jam. This process involved the Mill Man cutting strips of rubber off the mill and other employees, including Plaintiff, placing them on pin racks or picking them up off the floor and placing them on skids. *Page 5 
8. Plaintiff testified that the strips of rubber weighed anywhere from 25 to 60 pounds and that once they were taken from the mill, they had to be placed on the pin rack at about chest level. Plaintiff testified that if the strips were on the floor, they sometimes stuck to the floor since the rubber was hot, requiring more effort to pick them up and place them on the skid.
9. Although Defendants contend that the Mill Man could cut the pieces of rubber into smaller pieces, there is no evidence that that ever occurred. The Mill Man was trying to get the jam cleared to get the line running again. He did not have time to cut small pieces of rubber and had no means of weighing the pieces of rubber he cut. Plaintiff further testified that the mill would go down usually at least once a day, and some days it would go down five times, requiring him to participate in taking strips of rubber off of the mill to remove the jam.
10. Paul Fisher, an Area Manager in Fabric for Defendant-Employer, testified before the Deputy Commissioner and confirmed that part of the Wind-Up Operator position was to go to the mill if it stopped and assist others with taking strips of rubber off the mill. Mr. Fisher testified these strips of rubber weighed around 45 pounds and that they had to be put onto pin racks which are "relatively tall," between lower chest and shoulder level.
11. Paul Fisher also testified that the Mill Man had to get these cut pieces of rubber off the mill as quickly as possible before the rubber burned and could not cut them in smaller pieces. He also testified that the Mill Man does not have time to weigh the cut strips of rubber.
12. In early August of 2009, as a result of lifting these strips of rubber off the mill, as required of his Wind-Up Operator position, Plaintiff began experiencing pain in his left shoulder.
13. Defendants presented a video-taped job description of the Wind-Up Operator. The presented video does not include footage of the Wind-Up Operator taking the strips of rubber from the mill and placing them on pin racks or skids. Although the video does show *Page 6 
some overhead use of one arm to guide the rolls with the hoist with regards to operation of the Fabric Calendar, this activity does not appear to be repetitive.
14. Based on the preponderance of the evidence of the record, the Full Commission finds that the Wind-Up Operator position that Defendant-Employer required Plaintiff to work was unsuitable employment that required Plaintiff to perform physical duties in excess of the permanent restrictions recommended by Dr. Kobs as a result of Plaintiff's July 19, 2005 compensable left upper extremity injury by accident.
15. Plaintiff testified that on August 19, 2009, he was working his Wind-Up Operator position with Defendant-Employer, and he and his co-worker had been notified by an operator on the mill about a batch of bad rubber/loose coating. Plaintiff testified that he and his co-worker, "turned around for just a minute watching for this bad rubber, and looked back, and we had run out of cloth on the roll we were rolling." Plaintiff explained that you have rubber running through the calendar at "sixty yards per minute" and cloth is also running through the calendar at the same rate keeping the rolls of rubber separated. Plaintiff testified that if the cloth runs out, the result is "rubber to rubber; and it's going to stick."
16. Once Plaintiff and his co-worker noticed the cloth had run out, they cut off the machine and tried to back out as much rubber as they could from the machine; however, they were required to manually cut out a piece of rubber that was caught between two rolls. Only three people could fit into this area where the rubber was wound and they had to cut the rubber from the rolls and carry it 10 to 12 feet to a fork truck.
17. Plaintiff testified that the wound up rubber was approximately three-quarters of an inch thick and five to seven feet long weighing approximately 200 pounds. The wind up of rubber on the Fabric Calendar that occurred on August 19, 2009 was not something that usually *Page 7 
happened and this was the only time during Plaintiff's employment as a Wind-Up Operator that a wind up such as that had happened.
18. Paul Fisher testified that he had never seen a wind up of rubber on the Fabric Calendar like the one Plaintiff experienced on August 19, 2009, and testified he had never seen a wind up of rubber of more than half a rotation. Mr. Fisher confirmed in his testimony that if the cloth ran out and rubber wound together for more than half a rotation and was half an inch thick, it would weigh over 100 pounds.
19. While attempting to lift this wound up rubber with his co-workers, Plaintiff's shoulder began hurting and burning and he notified his supervisor of the injury. Later that day, Plaintiff visited Defendant-Employer's medical department where it was noted he had "pain in his left shoulder" and was recommended to follow up in two days.
20. Plaintiff followed up with the medical department of Defendant-Employer on August 21, 2009, and was given work restrictions of no lifting in excess of 10 pounds. Plaintiff followed up with the medical department on August 29 and September 3, 2009, where he was continued on light-duty restrictions and recommended for physical therapy.
21. After being assigned the light-duty restrictions by the medical department, Plaintiff testified that he did little things around the plant, such as getting cloth started and helping out where he could with one hand.
22. On October 28, 2009, Defendants authorized Plaintiff's evaluation with Dr. Kobs, Plaintiff's treating physician, who diagnosed Plaintiff with impingement syndrome. Dr. Kobs testified at his deposition that "he could not rule out a rotator cuff tear" and recommended an MRI of the left shoulder. Plaintiff underwent the MRI and followed up with Dr. Kobs on November 25, 2009, where Dr. Kobs opined the MRI indicated a "significant partial high-grade *Page 8 
undersurface tearing of the supraspinatus and infraspinatus." Dr. Kobs recommended Plaintiff have a "revision acromioplasty with possible rotator cuff repair" and that Plaintiff should do no lifting with his left arm.
23. Dr. Kobs testified to a reasonable degree of medical certainty that the August 19, 2009 injury by accident exacerbated the underlying left shoulder condition, requiring Plaintiff to need further treatment in the form of arthroscopic surgery with debridement and that Plaintiff's restriction of no lifting with his left arm would remain in effect until Plaintiff is able to undergo the left shoulder arthroscopy.
24. Plaintiff testified he would like to undergo the left shoulder arthroscopy recommended by Dr. Kobs, but has been unable to because he could not afford the costs.
25. Following Plaintiff's November 25, 2009 evaluation with Dr. Kobs, Defendants refused to authorize and pay for further treatment for Plaintiff's left shoulder. Plaintiff returned to work for Defendant-Employer until December 7, 2009, at which time Defendant-Employer told Plaintiff they did not have a job for him.
26. Defendant-Employer offered no other employment after requests by Plaintiff to return to work and Plaintiff began to receive Sickness Accident Benefits from Defendant-Employer in the weekly amount of $327.00. Plaintiff eventually was not able to financially make ends meet on the amount of the Sickness Accident Benefits and was forced to retire from Defendant-Employer so he could begin drawing retirement benefits.
27. Although Plaintiff has not looked for employment, Plaintiff is unaware of any positions he could currently apply for that would compensate him at or near what he made with Defendant-Employer with the restrictions of no lifting with left arm ordered by Dr. Kobs. *Page 9 
28. Plaintiff underwent an evaluation with Stephen Carpenter, whom the parties have stipulated as a vocational rehabilitation expert, on September 2, 2010. Mr. Carpenter testified at his deposition that to a reasonable degree of vocational certainty Plaintiff "is not employable in any job at any functional capacity and should be allowed to return to medical management so that surgical intervention can be initiated."
29. Based on the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff's shoulder injury was aggravated and exacerbated by the August 19, 2009 accident.
30. Based on the preponderance of the evidence of the record, the Full Commission finds that the treatment Plaintiff has received from Dr. Kobs has been reasonable, necessary and intended to effect a cure, give relief and lessen the period of Plaintiff's disability.
31. Based on the preponderance of the evidence of the record, and given Plaintiff's eighth grade education, lack of transferrable skills, advanced age, current medical restrictions, as well as the present economic conditions, the Full Commission finds that it would be futile for Plaintiff to search for employment prior to getting medical treatment and resolving the problems with his left upper extremity.
32. The Full Commission finds that Defendants unreasonably defended this claim.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The Wind-Up Operator position with Defendant-Employer was not suitable employment for Plaintiff as it required physical duties in excess of the restrictions assigned by *Page 10 
Dr. Kobs as a result of Plaintiff's July 19, 2005 compensable shoulder injury by accident. N.C. Gen. Stat. § 97-32; McLean v.Eaton Corp., 125 N.C. App. 391, 481 S.E.2d 289 (1997).
2. The Wind-Up Operator position was physically unsuitable employment and Plaintiff was injured while engaging in duties outside his physical restrictions set out by Dr. Kobs for his July 19, 2005 compensable left shoulder injury and, therefore, Plaintiff's August 19, 2009 injury resulting in an exacerbation to his left shoulder requiring further surgical intervention is compensable. N.C. Gen. Stat. §§ 97-2(6); 97-32.1.
3. Plaintiff is entitled to have Defendants authorize and pay for Plaintiff's arthroscopic debridement to his left shoulder and all reasonably related treatment recommended by Dr. Kobs. N.C. Gen. Stat. §§ 97-25, 97-25.1.
4. Plaintiff has remained disabled since his late date of employment with the Defendant-Employer on December 7, 2009.Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff is entitled to have Defendants provide temporary total disability benefits from December 7, 2009 to the present until Plaintiff returns to suitable employment or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. Defendants are not entitled to a credit for any retirement benefits Plaintiff has received since December 7, 2009.Heffner v. Cone Mills Corp.,83 N.C. App. 84, 349 S.E. 2d 70 (1986), Stroud v. CaswellCtr., 124 N.C. App. 653, 478 S.E. 2d 234 (1996).
7. Defendants are entitled to a credit for the Sickness and Accident Policy Benefits Defendant paid to Plaintiff since his last date of employment with the Defendant-Employer on December 7, 2009. N.C. Gen. Stat. § 97-42. *Page 11 
8. As Defendants' defense of this matter was unreasonable and indicative of stubborn, unfounded litigiousness, Plaintiff is entitled to sanctions in the form of attorney's fees. N.C. Gen. Stat. § 97-88.1. This attorney's fee shall not be deducted from the amounts due Plaintiff, but instead shall be paid to counsel for Plaintiff in addition to those amounts.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff's temporary total disability benefits of $704.00 per week beginning December 7, 2009, and continuing until Plaintiff returns to suitable employment or until further Order of the Industrial Commission. Defendants shall pay the compensation that has accrued in a lump sum, subject to the credit to Defendants for Sickness and Accident Policy Benefits paid to Plaintiff and subject to the attorney's fee approved below.
2. Defendants shall authorize and pay for the left shoulder surgery recommended by Dr. Kobs and all further treatment recommended by Dr. Kobs that is reasonably related to Plaintiff's compensable injury.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the total compensation awarded to Plaintiff. Defendants shall deduct 25% of the lump sum amount owed to Plaintiff and pay this amount directly to Plaintiff's counsel. Thereafter, every fourth check shall be paid to Plaintiff's counsel.
4. As a sanction pursuant to N.C. Gen. Stat. § 97-88.1, an attorney's fee of $2,000.00 shall be paid by Defendants to counsel for Plaintiff. This attorney's fee is to be paid by Defendants in addition to the actual accrued disability benefits owed to Plaintiff. The sanction *Page 12 
and fee based upon the accrued portion of benefits owed to Plaintiff as provided for in Paragraph 3 shall be paid to counsel for Plaintiff in a lump sum.
5. Defendants shall pay the costs.
This the __ day of August 2011.
 S/_____________________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_____________________________ LINDA CHEATHAM COMMISSIONER
 S/_____________________________ STACI T. MEYER COMMISSIONER *Page 1